ANGELO T. FRIEDLEY and FIDELITY TRUST COMPANY, Executors of John Alexander, deceased,

*vs.*

SECURITY TRUST AND SAFE DEPOSIT COMPANY, Trustee by appointment of the Chancellor of the State of Delaware under the ·Last Will and Testament of George Jones, deceased, MARY C. ALEXANDER, JOHN S. ALEXANDER, ARCHIBALD A. ALEXANDER, JOHN S. ALEXANDER, Administrator of James G. Alexander, deceased, and LUCIEN H. ALEXANDER.

*New Castle, Sept.* 27, 1912.

The power given a trustee by a will, in which testator gave real estate to a trustee in trust for the use of the trustee's children, with authority to retain the property for their benefit, or at his option to convey the same to them and their heirs, or sell the same and hold the proceeds in trust for the children, or at his discretion to pay the same over to them discharged of any trust, at such time and manner as will be most beneficial to them, is, as to the selection of the time and manner of payment of the estate reduced to personalty, a personal confidence in the trustee, not given him ex *officio*, and cannot be exercised by a substituted trustee, and at the death of the trustee, after reducing the estate to personalty the trust terminates, and the beneficiaries are entitled to the property without the intervention of a substituted trustee.

In general, on the death of a trustee, the trusteeship devolves on the executors or administrators of the deceased trustee.

A will whereby testator devised his real estate to a trustee, and his heirs and assigns, for the benefit of the children of the trustee, with authority to manage it for their benefit, or at his option to convey the same to them, or to sell the same and hold the proceeds in trust, or pay the same over to the children at such times and manner as he shall deem most beneficial to them, imposes on the executors of the deceased trustee the duty of paying over the estate reduced to personalty to the beneficiaries for the word "heirs" includes executors.

Where a testamentary trust estate consists of personalty, and the trust is terminated, so that the only duty remaining is to pay over the prop-

erty to the beneficiaries, a new trustee may not be appointed on the death of the trustee; but the interest of the beneficiaries is a present right to the possession of the trust property, and the duty of transferring the trustee's property rests on the executor of the deceased trustee.

Where a testamentary trust terminated on the death of a trustee, and the duty of paying over the trust estate, consisting of personalty, devolved on the executor of the trustee, and the appointment of a substituted trustee might result in injustice to the estate of the deceased trustee the appointment of a substituted trustee should be revoked on the application of the executor, though the beneficiaries asked for the appointment of a substituted trustee.

Where the court had no power to appoint a substituted trustee, the appointment may be invalidated at the instance of the executor of the deceased trustee.

BILL FOR CONSTRUCTION OF WILL AND REVOCATION OF THE APPOINTMENT OF A TRUSTEE. The case is before the court on a motion for a decree notwithstanding the answer, and was heard under the new equity rule No. 29-A, adopted January 1, 1912. The bill was filed by the executors of John Alexander against the Security Trust and Safe Deposit Company, appointed by the Chancellor trustee under the will of George Jones in the place of John Alexander, the testamentary trustee, after his death, and against the beneficiaries under the will of John Alexander.

George Jones, by his will, probated in 1867, by the second item thereof, made the following devise:

"Item Second. To my son-in-law, John Alexander and his heirs and assigns, I give and devise all my farm in Kent county in this state in trust for the equal use, benefit and behoof of his children by my daughter Mary Jane (now deceased) with authority to retain and manage it for their respective equal benefit, or at his option at any time to convey and assign the same to them and their heirs and tenants in common free and discharged of any trust, or, with the assent to be expressed in writing, of such of the children as may at the time of the exercise of such option, have attained twenty-one years of age, to sell and dispose of the said lands and tenements, at public or private sale for the best price to be obtained therefor, and thereupon to make a good and sufficient deed or deeds in fee simple therefor to the purchaser or purchasers thereof free from all trust and liability of the purchaser or purchasers to see to or account for the proper application of the purchase money by the said John Alexander or

his heirs, the said purchase money thereupon to be still in trust by him or them for my said grandchildren, or at his discretion, to be paid over to them respectively discharged of any trust, at such times and manner as he shall deem most beneficial to them respectively."

John Alexander accepted the trust, and in 1868 sold the farm, and received the purchase money and held it as trustee until his death in 1895. There were at the death of the testator five grandchildren, who became the beneficiaries. The will of John Alexander is made a part of the bill. On June 15, 1899, upon the petition of one of the beneficiaries, the Security Trust and Safe Deposit Company was appointed trustee under the said second item of the will of George Jones, in place of John Alexander, the deceased trustee, without notice to the executors of John Alexander. It was alleged that there was then no subsisting, unexecuted trust, and that the petitioner and other beneficiaries were entitled to sue without the intervention of a trustee for their respective shares of the trust estate, if any was due or belonging to them, and, therefore, that the appointment of the new trustee was inadvertently made. The prayer of the bill was that the court vacate the order appointing the new trustee and revoke the appointment.

By the answers the facts are admitted. In addition, the answers deny payment to the beneficiaries by John Alexander, or his executors, and insist that the trust was a continuing and subsisting trust, and that the appointment was properly made.

After the filing of the answers, the complainant filed an amendment to the bill, wherein it was shown, by a certified copy of the record, that suit had been brought in 1899 in the Circuit Court of the United States for the Eastern District of Pennsylvania by the Security Trust and Safe Deposit Company, trustee, so appointed, against the executors of John Alexander and the beneficiaries under the trust under item two. By the bill in that suit the complainant sought to compel payment to it of the trust estate. In the answer filed in that suit by the executors it was denied that there was any trust property unadministered by John Alexander at the time of his death, and that all of the beneficiaries had been settled with, or had received

from him in his life time large payments and advances, and that they had all been either paid their share, or were so largely indebted to him as to absorb all their share of the trust fund. Many of the dealings between the father and his children are set out in that answer.

Subsequently, the executors of John Alexander filed in the suit in the Federal Court a petition for the dismissal of the bill for want of jurisdiction, which was based on diversity of citizenship, the complainant, the trustee, being a citizen of Delaware and the others citizens and residents of Pennsylvania. By that petition it was alleged that the trustee was not a proper party because the trust had terminated at the time of its appointment, and that the only real parties were the beneficiaries, on one side, and the executors of John Alexander on the other. After argument of the questions raised by the petition to dismiss, Judge McPherson, in 1905, in his opinion thereon, declined to pass on the validity of the order of the Chancellor of Delaware appointing the new trustee, and said that the application to construe the will and revoke the appointment should be made to the Court of Chancery of Delaware.

It was pursuant to this opinion that the bill in this case was filed in this court.

The present motion under the rule is for a decree notwithstanding the answer, the facts set forth in the answer being taken to be true for the purposes of such motion only.

*H. H. Ward,* for the complainants.

All of the powers given to the trustee named in the will related distinctly to the subject of the trust while it was land. None of them are in their terms applicable to the subject of the trust after it was converted into money. After the real estate was turned into money, which was, within about a year after George Jones' death, the will provided:

That the purchase money was "*still*" to be held in trust by John Alexander, or his heirs, for the testator's said grandchildren; or

At John Alexander's discretion, such money was to be paid over to his grandchildren respectively, discharged of any trust,

at such times and manner as John Alexander should deem most beneficial to such grandchildren respectively.

No active duties whatsoever were imposed on the trustee relative to the fund resulting from the sale, except to hold it in trust for these grandchildren, or, at the discretion of John Alexander, to pay it over to them. There was no direction in the will to invest or reinvest such money, or to collect, pay over or account for its income either from time to time, or in any other way. John Alexander was to hold this fund simply in trust, but to perform no active duties, except at his discretion, both as to time and manner, to pay it over to the testator's grandchildren. It cannot be said, therefore, that after the conversion of the real estate into money, the trustee had any active duties to perform at all, except to exercise his discretion when and how to pay the fund to the persons entitled thereto. John Alexander could have terminated the trust at any time. No one but John Alexander could perform the trust, because the discretion of when and how to pay this money was vested in him alone. The full extent of the trust subsequent to the conversion of the real estate into money was a personal confidence reposed in John Alexander, at his full and unbound discretion to either hold the fund or pay it over to the grandchildren, and to pay it over to such grandchildren by a wholly unbound discretion to be exercised only by John Alexander, at such times and manner as he should deem most beneficial for such grandchildren.

It is equally clear that a trust purely personal to a named trustee, under which he could either hold the trust fund, or at his absolute discretion, as to time and manner, pay it over to the persons beneficially interested, as he should deem most beneficial to them is a trust which can be executed only by the named trustee, and that on his death such personal trust would also die and the persons beneficially interested become *ipso facto* the legal owners of the trust fund. No act of any court could make title more complete than it would become on the death of such a trustee. Inasmuch as the trust fund actually ceased and could not be executed by any other person, this consequence must necessarily follow. 28 *Am. & Eng.*

*Enc. of Law*, 919, 920; 3 *Pomeroy's Equity Jurisprudence*, §991; *Perry on Trusts*, §351; *Morgan, et al., v. Moore*, 3 *Gray* (*Mass.*) 319; *Long, et al., v. Long*, 62 *Md.* 33; *Temple v. Ferguson*, 110 *Tenn.* 84; *Hooper v. Felgner*, 80 *Md.* 262; *Numsen v. Lyon*, 87 *Md.* 31; *Graham v. Whitridge*, 99 *Md.* 248; *Smith v. Proctor*, 139 *N. C.* 314 (51 *S. E. Rep.* 889); *In re Marshall's Estate*, 11 *Pa. Co. Ct.* 588; *Ogden's Appeal*, 70 *Pa. St.* 501; *Dodson v. Ball*, 60 *Pa. St.* 492; *Westcott v. Edmunds*, 68 *Pa. St.* 34; *Bacon's Appeal*, 57 *Pa. St.* 504; *Rife v. Geyer*, 59 *Pa. St.* 393; *Abel v. Abel*, 75 *Md.* 44; *Chamberlain v. Maynes*, 180 *Pa. St.* 39; *Doe dem. White v. Simpson*, 5 *East* 152; *Shapland v. Smith*, 1 *Bro. Ch. Cas.* 75; *Doe, Lessee of Poor v. Considine*, 7 *Wall.* (*U. S.*) 458; *Young v. Bradley*, 101 *U. S.* 782; *Ottomeyer v. Pritchett*, 178 *Mo.* 160 (77 *S. W. Rep.* 62); *Doe d. McMullen v. Lank*, 4 *Houst.* 648; *Jamison v. McWhorter*, 7 *Houst.* 242.

Under these circumstances a Court of Chancery cannot appoint a trustee to perform such a trust, nor to perform any other act, where the sole powers in such trustee are a personal and peculiar confidence reposed in such trustee. *Hadley v. Hadley*, 147 *Ind.* 423; *Barbour v. Weld*, 201 *Mass.* 513; *French v. Northern Trust Co.*; 197 *Ill.* 30; *Benedict v. Dunning*, 110 *App. Div.* (*N. Y.*) 303; *Gambell v. Trippe*, 75 *Md.* 252; *Hinckley v. Hinckley*, 79 *Me.* 320; *Security Co. v. Snow*, 70 *Conn.* 288; *Young v. Young*, (*N. C.*) 2 *S. E. Rep.* 78; *Baker v. McAden*, 118 *N. C.* 740 (24 *S. E. Rep.* 513).

*William S. Hilles*, for the defendants.

It is manifest that at the time of the death of John Alexander there was in his possession, as trustee, a sum of money held by him in trust, all of the purposes of which passed after his death to his executors. The trust fund certainly did not belong to them as part of the estate of John Alexander, to be administered by them in the regular course of their administration. It could not be applied by them to the payment of legacies or debts; it remained and continued a trust, if for no other purpose, at least for the purpose of distribution among those entitled. It will not be questioned that upon the death of a trustee holding personal property in trust, the trust fund

passes to the executors or administrators of the deceased trustee. 1 *Perry on Trusts*, §§264, 269, *Note* 344; *Tyler v. Mayre*, 95 *Cal.* 160; *Margarum v. J. S. Christie Orange Co.*, 19 *South.* 637; *Schenck v. Schenck*, 16 *N. J. Eq.* 174; *Gulick's Adm'r. v. Bruere, Trustee*, 42 *N. J. Eq.* 639; *Moses v. Murgatroyd*, 1 *Johns. Ch.* 119; *Whetmore v. Hegeman*, 88 *N. Y.* 69.

It is not necessary to discuss or decide in this case whether the discretionary power given by George Jones to John Alexander was one which could be exercised by a substituted trustee, and for the purposes of this argument it may be admitted that the weight of authority is that such discretion did not pass to the Security Trust and Safe Deposit Company. 2 *Perry on Trusts*, §§503 *note*, 508, 510; 39 *Cyc.* 104; *Hill on Trustees*, 248; *In re Laing*, 59 *App. Div.* (*N. Y.*) 612, *affirmed* 170 *N. Y.* 621; 3 *Pomeroy's Equity Jurisprudence*, §988 *and cases cited*.

What right have the executors of John Alexander to question the continued existence of the trust, if they have a fund in their hands, which in this proceeding must be taken as admitted, which is subject to the trusts contained in the George Jones will, and where all of the beneficiaries interested in that fund are in court insisting that the fund should be conveyed to the new trustee? It is elementary that a party to a legal or equitable proceeding must have some interest in the relief sought. And what possible interest have the executors of John Alexander in this question, in view of the fact that the *cestui que trusts* desire the fund paid to the trustee? *Elsworth v. Hinton*, 4 *N. Y. Supp.* 573:

For two reasons it is submitted that the bill in this cause must be dismissed. First, because the trust under the will of George Jones was not fully performed until the trust fund had reached the hands of the beneficiaries, or their appointee; and second, because the complainants in this cause have no such interest as will enable them to maintain this bill as against the request of all the *cestui que trusts* that the trust fund be paid to the new trustee.

THE CHANCELLOR. The motion argued is one by the complainant for a decree notwithstanding the answers, and is

in the nature of a demurrer to the answers. The new rule of court provides a way to test the main question raised in this case *in limine*, without waiting for a determination of it at the end of the usual proceeding to bring a cause to trial in Chancery.

By their bill, the executors of John Alexander seek a revocation of the appointment of a trustee to succeed John Alexander, the trustee named in the will. Two questions should be considered: (1) Should the appointment have been made, and (2) should it be revoked? In brief the facts are that George Jones by will devised a farm to John Alexander in trust for the equal benefit of the children of John Alexander by his wife, Mary Jane (a daughter of the testator), with authority to manage the farm and sell it, the proceeds of sale to be still held in trust for said grandchildren of the testator, "or at his [John Alexander's] discretion to be paid over to them respectively discharged of any trust, at such times and manner as he shall deem most beneficial to them respectively." Soon after the death of the testator the land was sold. After the death of the testamentary trustee the Court of Chancery of Delaware appointed a new trustee.

For the executors of the deceased trustee it is contended that after the conversion of the realty into money the trust was a personal confidence in John Alexander, at his full and unbound discretion to either hold the money or to pay it over to the beneficiaries at such times and in such manner as he only should deem beneficial ; and that on his death, as no one could withhold payment, the beneficiaries *ipso facto* became legal owners of the trust fund, and, therefore, no new trustee could be appointed.

It was not contended by the solicitor for the defendants that the trust was not a personal confidence, but it was admitted for the purpose of the argument that as to the proceeds of sale the trust was discretionary in John Alexander and the discretion did not pass to the substituted trustee. But it was urged that as the duty to distribute the money among the beneficiaries remained, the trust did not terminate at the death of John Alexander and the appointment of a new trustee was proper and necessary.

6

. The language of the trust under consideration in the case of *Wilmington Trust Co. v. Jacobs*, 9 *Del. Ch.* 77, 77 *Atl.* 78, affirmed by the Supreme Court 9 *Del. Ch.* 400, 80 *Atl.* 346, was so different from the case under consideration that the case is not helpful in construing the will of George Jones. Even tested by the principles of law stated therein, the powers given to John Alexander were personal to him and were not given to him *ex officio*. It is really unnecessary in this case, however, to consider whether the power to withhold or distribute the proceeds of sale was or was not given to John Alexander only, because it is not so contended. It is quite clear from the will, however, that the power to determine the trust and the manner of payment of the purchase money to the beneficiaries was personal to John Alexander. While the trust estate consisted of real estate it was an active trust, and, therefore, because of the character of the devise, the legal title vested in John Alexander, the trustee. It was also expressly directed by the will that the trust should continue as to the proceeds of sale, the words of the will being, "the said purchase money to be still in trust by him or them." From the context it is clear that the word "him" refers to John Alexander and the word "them" to the word "heirs," immediately preceding. Thus it was indicated that the trust continued after the death of John Alexander.

A fair construction of the will is that upon the conversion of the trust property from real estate into money, as authorized by the will, the grandchildren became entitled to an equal share thereof, subject to the right of John Alexander, their father, to withhold from either one or all or them their respective shares. This appears clear from the vesting in him of the power to pay the purchase money over to them respectively, i. e., to each his equal share thereof, at such time and in such manner as he, John Alexander, should deem most beneficial to each of them respectively. In this way the testator insured the exercise of the personal judgment of the named trustee to select the best time and manner for paying over to each beneficiary his share of the trust property. John Alexander alone could withhold from any beneficiary his equal share. The power to withhold payment was vested in John Alexander only, and not in his

"heirs," whoever was meant by the use of that word. It was "at his discretion," meaning at John Alexander's discretion, that the money could be withheld. If the testator had intended to give the discretion to the "heirs" of John Alexander the will would have read "at his or their discretion." In case John Alexander had not in his life, after the conversion, exercised such power and discharged such duty, then that part of the trust and the power of withholding payment terminated.

Therefore, upon the death of John Alexander the trust terminated as to any trust property not administered in his life, and either one of two results followed, viz: either the trust failed and the beneficiaries thereby lost their right to have any portion of the trust fund because the only one who had discretion to give it to them had died without doing so, or else the beneficiaries were then entitled to have the whole of the unadministered trust fund distributed to them equally. Of course, if the first named result was the correct one, the appointment of a new trustee was manifestly improper.

It is not contended, however, by either side that the right of the beneficiaries to have the trust estate would have been defeated entirely by the failure of John Alexander to exercise his discretion as to paying over the fund, and it is not necessary for the complainant to uphold such a view in order to be entitled to a decree vacating the order for the appointment of the new trustee. Both sides say that the trust property passed to the executors of the deceased trustee. They differ on the point whether the beneficiaries should proceed to enforce their claims against the executors of the deceased trustee directly, or through a new trustee.

In general, upon the death of a trustee the trusteeship devolves upon the executors or administrators of the deceased trustee. 1 *Perry on Trusts*, §§264, 269 (*note*), 344. This duty is cast upon the executors by the will of George Jones. The purchase money, when received, was still in trust by John Alexander, or his "heirs," meaning undoubtedly by the word "heirs" those persons upon whom the law cast the duty and power to do that which the testamentary trustee had not done, viz: upon his executors. But their duties and powers were

only to divide equally and pay over to the class of beneficiaries, in case the trustee had not done so in his life time. Against such executors the beneficiaries could have proceeded directly and without the intervention or assistance of a new trustee. The persons entitled, and their proportionate shares thereof, were ascertained. It was not a case where there was a power of selection either as to the persons to be entitled or their shares.

The first question is narrowed down to this: Where the trust estate consists of personal property and the trust has terminated, so that the only duty remaining unperformed is to pay over in equal shares to certain beneficiaries the trust property, should a new trustee be appointed upon the death of the testamentary trustee?

In Delaware this question seems to be quite well settled as to a trust respecting real estate. If the active duties of a trustee have come to an end, the beneficiaries become immediately and solely, by operation of law, entitled to the trust property. If it be real property, the legal title vests directly in the beneficiaries without the need even of a deed from the trustee, or, if he be dead, from his heirs or representatives, for it will be assumed that such a deed was made. *Doe dem. McMullen v. Lank*, 4 *Houst.* 648; *Jamison v. McWhorter*, 7 *Houst.* 242, 251, 257, 31 *Atl.* 517; *Reilly v. Conrad*, 9 *Del. Ch.* 154, 78 *Atl.* 1080. See, also, *Bacon's Appeal*, 57 *Pa. St.* 504.

The same result applies to personalty, independent of the effect and operation of the statute of uses, which applies only to real estate, for the reason that the purposes of the trust being accomplished the interest of the beneficiaries is a present right to the possession of the trust property.

In the case of *Hooper v. Felgner*, 80 *Md.* 262, 270, 30 *Atl.* 911, personal property was bequeathed to trustees upon trust to pay the net income thereof to the testator's daughter G. for life, without power to anticipate or encumber the estate, and after her decease upon trust for all the children of G. then living, and the issue of any deceased children. Held, that upon the death of G., leaving two daughters, one being an infant, the objects of the trust were accomplished, and G.'s daughters became the absolute owners of the property, the share

of the infant daughter being payable to her guardian. At page 272 of 80 *Md.*, and page 912 of 30 *Atl.*, the court, after noticing that the statute of uses had been construed to relate only to realty, says:

"At the same time, however, it may be considered settled, that a trust in regard to personal property will continue so long and no longer, than the purposes of the trust require. And that when all the objects of the trust have been accomplished, the person entitled to the beneficial use is regarded as the absolute owner, and as such, entitled to the possession of the property. Under this will the objects and purposes of the trust, namely, that the trustees should pay the net income to Grace Felgner during her life, and for her sole and separate use, without power of anticipation, &c., were fully accomplished, and upon her death the trustees had no longer any active duty to discharge. And this being so, her two children being entitled to the ultimate use, became the absolute owners of the property."

Where no duty remained to be done by a deceased trustee, except transfer to the beneficiaries the trust estate a new trustee will not be appointed, for his only duty would be to act as a conduit to transfer the trust property, the duty to do which devolves on the executor of the deceased trustee. *In re Kittinger's Estate*, 9 *Del. Ch.* 71, 77 *Atl.* 24; *Reilly v. Conrad*, 9 *Del. Ch.*, 154, 78 *Atl.* 1080; *In re Sheaff's Estate*, (1911) 231 *Pa. St.* 251, 80 *Atl.* 361.

In the case of *In re Kittinger's Estate, supra*, this court refused to appoint a new trustee where the trust had terminated, and the only duty to be performed was to convey real and personal estate, the sole beneficiary being the holder of the legal title as the heir at law of the deceased trustee and because it was the duty of the executor of the deceased trustee to pay over the personal property to the beneficiary.

The solicitor for the defendants suggested no other duty to be performed by the new trustee than to collect the trust fund and distribute it among the beneficiaries, and it is a sufficient answer to the proposition to say that admittedly the law casts this duty on the executors of the deceased trustee, and the beneficiaries could proceed against them directly and needed not a new trustee to enforce their rights. The only case cited

by the defendants against this course is the case of *In re Laing*, 59 *App. Div.* 612, 69 *N. Y. Supp.* 214, affirmed 170 *N. Y.* 621, 63 *N. E.* 1119, but is not a satisfactory authority, and will not be followed.

It is clear, then, that the Security Trust and Safe Deposit Company should not have been appointed in 1899 by the Chancellor as trustee in place of John Alexander, deceased.

The second question is this: Should the order appointing the trustee be vacated and the appointment revoked? As herein stated, there is no reason stated, or now conceived, why the beneficiaries should not have taken steps to enforce in their own name their rights against the executors of the deceased trustee. From the record of the cause there is at least grave danger that injustice be done to the estate of John Alexander by a continuance of the trusteeship. If the deceased trustee in his life time settled with the beneficiaries, or they were indebted to him for advances, or if he had otherwise practically distributed the trust estate, or provided by his will for a distribution thereof among the beneficiaries, as is alleged by the executors and as appears in part in his will, then it would be inequitable and unfair that the continuance of the new trustee in office should be interposed as even a temporary barrier to the benefit of such defenses by the executors.

It is further urged by the defendant that as the beneficiaries of the trust asked for the appointment of a new trustee the executors of the deceased trustee had no right to object to the making of the appointment. But if the court had no power to make the appointment, the appointment may be invalidated even at the instance of one other than the beneficiary. On the other hand, if the court had power to make the new appointment, and it appeared that injustice would likely be done by exercising the power, the court should refuse to so appoint, and in case an appointment had been made, it should be revoked upon a discovery of the facts showing that the appointment should not have been made originally.

The executors of the deceased trustee have such an interest in the appointment of a new trustee as to give them a right to oppose such an appointment, or, at least, to seek a revoca-

tion of an appointment inadvertently or unwisely made. The case of *Elsworth v. Hinton*, 4 *N. Y. Supp.* 573, is not applicable to the case at bar, where the executors in fact have a live duty to protect the estate of the deceased trustee from assaults made through a substituted trustee, which could not be made by the beneficiaries directly.

It is clear, then that the order appointing the new trustee should be revoked.

For the reasons, therefore, that the trust as to the selection of the time and manner of payment of the trust estate consisting of personal property was a personal confidence in the testamentary trustee, not given to him *ex officio*, it could not be exercised by a substituted trustee, and, therefore, at the death of the testamentary trustee the trust terminated and the beneficiaries being then entitled to have paid to them the trust property, without the intervention of a new and substituted trustee to act as a mere conduit, the court had no power to appoint such new trustee, or at least should not have made the appointment, and the appointment heretofore made should be revoked, especially where, as the result of the appointment, injustice may be done to the estate of the deceased trustee.

Let a decree be entered accordingly.